1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NABIL SALAH NABHANI,

        Plaintiff,

    v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

        Defendant

Case No.: C-13-0211 JSC

**ORDER GRANTING IN PART AND
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT;
GRANTING IN PART AND DENYING
DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

      Plaintiff Nabil Salah Nabhani ("Plaintiff") brings this action pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3), seeking judicial review of a final decision by Defendant Carolyn W. Colvin ("Defendant"), the Commissioner of the Social Security Administration ("SSA"), denying him Disability Insurance Benefits ("DIB").  Now pending before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment.  After carefully considering the parties' submissions, the Court GRANTS Plaintiff's Motion for Summary Judgment in part, DENIES Defendant's Cross-Motion for Summary Judgment, and REMANDS the case for a new hearing consistent with this Order.

**PROCEDURAL BACKGROUND**

Plaintiff applied for Supplemental Security Income ("SSI") and DIB on June 24, 2010. Plaintiff alleges that his disability began on January 1, 2004.  The Social Security Administration ("SSA") denied Plaintiff's claims initially and upon reconsideration.  Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ").

A hearing was held before ALJ Mary P. Parnow on March 12, 2012 in Oakland, California, and a supplemental hearing was held on July 16, 2012.  Plaintiff and his ex-wife, Lena Nabhani, testified at the initial hearing.  Medical expert, Dr. Paul Weise, testified at the supplemental hearing.  The ALJ issued a "Partially Favorable" decision awarding SSI benefits, but denying DIB benefits based on a finding that Plaintiff was not disabled prior to June 30, 2007, the last date Plaintiff was insured. [1]  After the Appeals Council denied review on December 18, 2012, the ALJ's decisions became the final decision of the Commissioner. Plaintiff subsequently brought the current action, seeking judicial review pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3).  Plaintiff appeals the ALJ's decision denying him DIB benefits.

**FACTUAL BACKGROUND**

Plaintiff, who was 47 years old when he filed for disability, has a bachelor's degree in computer science.  (AR 51.)  He previously worked as a computer engineer from 1991 to 2004.  (AR 625.)  From 2005 to 2007, Plaintiff helped his ex-wife with her cigarette shop and cigar lounge.  (AR 58.)  In 2008, Plaintiff worked for four to six weeks as a computer systems engineer.  (AR 62.)  Unable to maintain a normal work schedule, Plaintiff opened his own computer consulting business and has since worked about four hours per week.  (AR 34.)

In his initial DIB application, Plaintiff alleged disability on the basis of severe pain in his neck and lower back, as well as constant numbness as of January 1, 2005.  (AR 624.)  In his subsequent request for reconsideration, Plaintiff further alleged that he has been depressed

---

[1] To qualify for DIB benefits, a claimant must be fully insured and have at least 20 quarters of coverage in the 40-quarter period which ends with the quarter in which the disability occurred.  *See* 40 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b); *Chapman v. Apfel*, 236 F.3d 480, 482 (9th Cir. 2000).  The issue is not whether Plaintiff was insured, but rather, whether he was disabled prior to his date last insured thereby allowing him to obtain DIB benefits.

1  and "[unable] to live a normal life" since January 2000.  (AR 635.)  His condition limits his

2  ability to lift, sit, stand, or walk.  (AR 650.)  He has difficulty in caring for his personal needs.

3  (AR 653.)  He gets tired very easily, and has trouble focusing on work activities.  (AR 656.)

4  For example, when trying to fix a computer, he requires breaks to rest, lie down, take his

5  medication, and attempt to keep his mind off the chronic pain in his neck, shoulder, and lower

6  back.  (*Id.*)

7  **I.      Medical History & Evaluations**

8       Plaintiff has been assessed by multiple doctors, including both treating and examining

9  source physicians.

10      **A.      2000 to 2001 Medical History**

11      Plaintiff's medical records indicate treatment for both physical and mental health

12  impairments from 2000 through 2001.  In December 2000, Plaintiff underwent an MRI of his

13  spine which revealed diffuse degeneration of discs C2-3 to C6-7, with a disc bulge at C5-6

14  compressing his thecal sac.  (AR 692.)  During January 2001, Plaintiff had a neurology

15  consultation at Kaiser Permanente in Oakland with Dr. Bakshi, during which Plaintiff was

16  found to have limited range of motion in his neck and subjectively decreased sensation in his

17  left-side dermatomes.  (AR 698-99.)  Plaintiff was assessed with left C6 cervical

18  radiculopathy, chronic neck pain, and anxiety/depression.  (AR 699.)

19      In February 2001, Plaintiff met with Dr. Bakshi at Kaiser for a second consultation.

20  (AR 703.)  Plaintiff reported that he could not go back to work because any type of physical

21  activity or stress seemed to flare-up his symptoms.  (*Id.*)  Plaintiff exhibited some degree of

22  somatization with giveaway weakness in his left arm.  (*Id.*)  However, with some

23  encouragement, he was able to offer 5/5 strength in the deltoid, biceps, triceps, wrist

24  extensors, and interossei.  (*Id.*)  Dr. Bakshi opined that Plaintiff had little in the way of

25  objective findings to support an acute or cervical radiculopathy, and his anxiety and

26  depression were interfering with his recovery.  (*Id.*)

27      As for Plaintiff's mental health treatment, Plaintiff was evaluated by Dr. Bill Kearney

28  in December 2000.  (AR 912.)  Plaintiff reported "poor sleep, anxiety, depression, no

motivation, [and] poor concentration." (*Id.*)  In subsequent visits with Dr. Kearney, Plaintiff was described as tearful, anxious, angry, and in pain.  (AR 911.)  In February 2001, Dr. Carroll Brodsky conducted a psychiatric evaluation of Plaintiff relative to a Worker's Compensation claim.  (AR 456.)  Dr. Brodsky noted Plaintiff "appears to be immobilized and withdrawn, and has no energy for life."  (AR 475.)  Further, his "tendency to repress or deny problems makes him particularly resistant to the idea that psychological factors can influence his symptoms."  (AR 477.)

Plaintiff voluntarily resigned from his job at Lawrence Lab on February 14, 2001.  (AR 445-46.)  He subsequently lost his health insurance, and was unable to afford COBRA.  (AR 705.)  Plaintiff's final treatment note at Kaiser is dated July 11, 2001.  (AR 930-31.)

Plaintiff began receiving medical treatment at Highland Hospital in June 2010, after learning about their affordable healthcare options.  (AR 66-67.)

**B.    Dr. Ross**

On July 29, 2010, Dr. Barbara Ross took x-rays of Plaintiff's spine, at the request of Christopher Pieda, DC.  (AR 716.)  Dr. Ross's findings were as follows:

> There is straightening of normal cervical lordosis.  Cervical vertebral bodies are normal in height.  There is no evidence of malalignment.  Mild disc space narrowing is seen at the C5-6 level.  The odontoid process is intact.  Oblique views do not demonstrate any evidence of significant neural foraminal narrowing.  Visualized lung apices are clear.  No prevertebral soft tissue swelling is seen.

*Id.*

**C.    Dr. Pancho**

Dr. Linda Pancho is a non-examining physician.  On October 25, 2010, Dr. Pancho reviewed the medical evidence record and opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and was otherwise unlimited in the amount he could push or pull.  (AR 746.)  Thus, Dr. Pancho determined Plaintiff was capable of doing a light range of work.  20 C.F.R. § 404.1567(b).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.     Dr. Spivey**

On November 17, 2010, Plaintiff attended a disability determination services ("DDS") psychological evaluation with Dr. Patricia Spivey.  (AR 757.)  Dr. Spivey reported that Plaintiff was "defensive and guarded."  (*Id.*)  Plaintiff's mental health status was difficult to determine because Plaintiff was defensive when Dr. Spivey asked him questions regarding his mental health, and no records were available.  (AR 758.)  Nonetheless, Dr. Spivey assessed Plaintiff with mild limitations in his ability to: follow instructions, complete simple repetitive tasks, complete complex tasks, maintain adequate attention, adapt to changes in job routine, withstand the stress of a routine work day, verbally communicate effectively with others, and communicate effectively in writing.  (*Id.*)  Dr. Spivey also assessed Plaintiff with moderate limitations in maintaining emotional stability and interacting appropriately with co-workers, supervisors, and the public on a daily basis.  (*Id.*)

**E.     Dr. Chen**

In October 2010, Plaintiff underwent a comprehensive internal medicine evaluation with Dr. Frank Chen, M.D.  (AR 740.)  In addition to an extensive examination, Dr. Chen reviewed Plaintiff's disability reports, a 2010 MRI of the cervical spine, and a 2000 x-ray of the cervical spine.  (AR 740.)

Dr. Chen diagnosed Plaintiff with chronic neck and lower back pain, and numbness of the left hand likely due to cervical spondylosis and cervical spinal stenosis.  (AR 742.)  With respect to Plaintiff's residual functional capacity ("RFC"), Dr. Chen noted that:

> The number of hours claimant can stand and walk in an 8-hour day is 6 hours.  There is no restriction for [him] to sit in an 8-hour day.  The amount of weight that claimant can lift and carry using the right arm is 20 pounds occasionally and 10 pounds frequently, using his left arm is 10 pounds occasionally and 10 pounds frequently.  There is no postural limitation on bending, stooping, or crouching and the claimant can perform this frequently.  There is a slight limitation on grasping using the left arm, otherwise there are no manipulative limitations on reaching, handling or fingering and the claimant can perform this frequently.

*Id.*

5

United States District Court
Northern District of California

**F.      Dr. Fair**

On December 22, 2010, Dr. Stephen Fair conducted a psychiatric assessment of Plaintiff.  (AR 776.)  Dr. Fair determined that Plaintiff did not suffer from a medically determinable impairment.  (*Id.*)  Plaintiff told Dr. Fair that he does not have mental health issues.  (AR 788.)  Dr. Fair nonetheless noted that Plaintiff was defensive when asked questions regarding mental health and reported that Plaintiff "either has no mental health issues or was unable to discuss his [mental health] due to poor insight."  (*Id.*)

**G.      Dr. Thomsen**

Plaintiff was referred to licensed psychologist, Ede Thomsen, Ph.D, by an advocate at the Homeless Action Center.  (AR 834.)  On February 4, 2011, Dr. Thomsen evaluated Plaintiff.  Dr. Thomsen diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and narcissistic, histrionic, and antisocial personality features.  (AR 841.) Dr. Thomsen opined that Plaintiff has a severe deficit in motor functioning, a moderate deficit in attention/concentration, and a mild deficit in memory functioning.  (*Id.*)  Dr. Thomsen further opined that Plaintiff's mental illnesses interfere with his functioning. (*Id.*)

**H.      Dr. Barrett**

Dr. Barrett is Plaintiff's primary care physician at Eastmont Wellness Center.  On March 30, 2011, Dr. Barrett completed a Medical Source Statement.  (AR 875-78.)  Dr. Barrett diagnosed Plaintiff with fibromyalgia, chronic neck pain, cervical spinal stenosis, and depression.  (AR 875.)  Dr. Barrett opined that Plaintiff has the ability to carry less than 10 pounds on an occasional basis, to stand and walk less than two hours during an eight-hour day, and to sit less than two hours in an eight-hour day.  (*Id.*)  Dr. Barrett also reported that Plaintiff's impairments affect his ability to reach, handle, finger, and feel. (AR 877.)  Dr. Barrett anticipated that Plaintiff's impairments would cause Plaintiff to be absent from work more than three times per month.  (AR 878.)

**I.      Dr. Kalich**

Plaintiff was referred, by his attorney, to Lisa Kalich, Ph.D for a psychological

6

United States District Court
Northern District of California

1  evaluation.  (AR 901.)  Dr. Kalich based her conclusions on the evaluation, a review of the

2  records, an interview with Plaintiff, and an interview with Plaintiff's ex-wife.  (AR 901,

3  907.)  Dr. Kalich reported that it is possible Plaintiff's reluctance to disclose mental illness

4  may be due to his "cultural beliefs regarding the stigma of mental illness."  (AR 906.)  Dr.

5  Kalich opined that Plaintiff's "mental health difficulties began in 2000."  (AR 907.)  She

6  also concluded that Plaintiff likely experiences intermittently severe impairment with

7  regards to daily living.  (*Id.*)

8  **II.     The ALJ Hearings**

9       At the initial hearing on Plaintiff's claim, Plaintiff and his ex-wife, Lena Nabhani,

10 testified.  Ms. Nabhani began to notice Plaintiff's physical and emotional problems shortly

11 after they met in 2002.  (AR 74.)  She further stated that these "issues" have gotten worse over

12 time, and have precluded Plaintiff from making a steady income and led to their divorce in

13 2005.  (AR 74-75.)  Ms. Nabhani also noted that, in 2005, Plaintiff began missing eight days

14 of work per month because he could not get out of bed.  (AR 77.)  A supplemental hearing

15 was required because the parties ran out of time at the initial hearing, and the ALJ needed the

16 assistance of a medical expert.  (AR 80.)

17      At the supplemental hearing, Plaintiff testified along with medical expert, Dr. Paul

18 Weise.  Dr. Weise testified that based on the record, Plaintiff has several medically

19 determinable impairments: depressive disorder, anxiety disorder, and personality disorder.

20 (AR 41.)  Dr. Weise concluded that Plaintiff's moderate limitations began in 2007.  The ALJ

21 asked Dr. Weise whether this opinion was "based on anything in the record or . . . more on

22 [his] expertise in terms of how these impairments present."  (*Id.*)  Dr. Weise asserted that

23 there were not records to support his conclusion; instead, it was "based on an extrapolation

24 from the presentation."  (*Id.*)  As support for his opinion, Dr. Weise pointed to the evaluations

25 of Dr. Kalich and Dr. Thomsen.  (AR 18.)

26 **III.    ALJ's Disability Determination**

27      **A.     Five-Step Sequential Evaluation**

28      A claimant will be considered "disabled" under the SSA if he or she meets two

7

requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

First, the claimant must demonstrate "an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or

impairments must be severe enough that he is unable to do his previous work and cannot,

based on his age, education, and work experience, "engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The ALJ conducts a five-step sequential inquiry to determine whether a claimant is entitled to

benefits.  20 C.F.R. § 416.920.  At the first step, the ALJ considers whether the claimant is

currently engaged in substantial gainful activity (i.e., if the plaintiff is currently working); if

the claimant is not, the second step asks if the claimant has a severe impairment or

combination of impairments (i.e., an impairment that has a significant effect on the claimant's

ability to function); if the claimant has a severe impairment, the third step asks if the claimant

has a condition which meets or equals the conditions outlined in the Listings of Impairments

in Appendix 1 of the SSR; if the claimant does not have such a condition, the fourth step

assesses the claimant's RFC and determines whether he is still capable of performing past

relevant work.  20 C.F.R. §§ 404.1520(b), 404.1520(f).

   If the claimant is not capable of performing his past relevant work, the fifth and final

step asks whether, based on his RFC, age, education, and work experience, the claimant can

perform any other existing work in the national economy.  20 C.F.R. §§ 404.1520(g),

416.920; *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995).  At the fifth step, the burden

shifts to the defendant to demonstrate the existence of a significant number of jobs in the

national economy that could be performed by the claimant.  *Andrews*, 53 F.3d at 1040.

   **B.     The ALJ's Five-Step Evaluation**

   After conducting the hearings and considering the testimony and evidence, the ALJ

followed the SSA's five-step sequential evaluation process for determining disability.  *See* 20

C.F.R. § 404.1520(a).  First, the ALJ found that Plaintiff met the insured status requirements

United States District Court
Northern District of California

1    through June 30, 2007, and has not engaged in substantial gainful activity ("SGA") since the

2    alleged onset date of January 1, 2004. (AR 15-16.) Plaintiff's testimony indicated that he has

3    worked after the alleged disability onset date. (AR 15.) The ALJ concluded the "disability is

4    not precluded on the basis of work activity" because "the record is unclear as to when, if at all,

5    [his] work activity reached the level of SGA." (AR 16.)

6            Second, the ALJ found that beginning on the established onset date of disability, June

7    24, 2010, Plaintiff has had the following severe impairments: cervical degenerative disc

8    disease with a C5-C6 disc bulge and radiculopathy; spondylosis and stenosis, with bilateral

9    neural foraminal stenosis; radiculopathy; fibromyalgia; depressive disorder; anxiety disorder;

10   and personality disorder. (*Id.*) However, the ALJ found that prior to June 24, 2010, Plaintiff

11   only had the following severe impairments: cervical degenerative disc disease with a C5-C6

12   disc bulge and radiculopathy. (*Id.*) "Although the record contains some mental health notes

13   from December 2000 to April 2001," the ALJ noted that Plaintiff "did not receive treatment

14   for his alleged mental or physical impairments from 2001 to 2010." (*Id.*) Additionally, in

15   2010, Plaintiff "denied having mental health issues to consultative psychologist Dr. Patricia

16   Spivey." (*Id.*)

17           Third, the ALJ found that Plaintiff does not have "an impairment or combination of

18   impairments that meets or medically equals the severity of one of the listed impairments in 20

19   C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*) The ALJ considered Plaintiff's physical

20   impairments under Section 1.04 and concluded that the "evidence fails to demonstrate that

21   [Plaintiff's] back condition prevents him from performing gross or fine manipulation

22   effectively." (*Id.*) Next, the ALJ considered Plaintiff's mental impairments under Sections

23   12.04, 12.06, and 12.09 and concluded that the evidence does not establish that Plaintiff

24   "satisfies the 'Paragraph B' criteria of the listing." (*Id.*)

25           Fourth, for purposes of determining RFC, the ALJ considered the opinions of Dr.

26   Weise, Dr. Pancho, Dr. Barrett, Dr. Spivey, and Dr. Chen, as well as Plaintiff's work history

27   and testimony, and the testimony of Plaintiff's ex-wife Lena Nabhani. (AR 18-19.) The ALJ

28   concluded Plaintiff had RFC to perform a full range of light work prior to June 24, 2010, and

only after that date was Plaintiff's RFC less than "a wide range of sedentary work." (AR 17, 20.) In doing so, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning "the intensity, persistence and limiting effects" of the symptoms "are not credible prior to June 24, 2010, to the extent they are inconsistent with the [RFC] assessment." (AR 18.)

With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff does suffer from an ongoing mental impairment, but not prior to June 24, 2010. (*Id.*) In making this finding, although the ALJ gave some weight to Dr. Spivey, the ALJ gave greater weight to the testimony of Dr. Weise because "he had the opportunity to review the entire file." (AR 20.) However, the ALJ did not accept Dr. Weise's conclusion that Plaintiff had suffered from mental limitations since 2007 because Dr. Weise's "willingness to extrapolate from presentation does not bridge a 10-year gap in [Plaintiff's] treatment." (*Id.*) The ALJ found it more significant that Plaintiff "denied having mental health problems during his consultative examination" in 2010, that Plaintiff testified in 2012 that he did not receive treatment at that time, and that Plaintiff worked long after the alleged onset date. (AR 19.)

With regard to Plaintiff's physical impairments, the ALJ gave great weight to the assessment of the DDS medical examiner, Dr. Pancho, who found that Plaintiff "[was] capable of a full range of light work" prior to June 24, 2010. (*Id.*) The ALJ noted that Dr. Pancho's conclusion was consistent with that of Dr. Chen who "reported an essentially normal examination, save very slightly diminished left hand grip strength" in October 2010. (*Id.*) Nonetheless, the ALJ did not credit Dr. Chen's opinion that Plaintiff was "capable of lifting only 10 pounds occasionally and frequently with his left, non-dominant arm" because Plaintiff's weakness was "both minimal and questionable." (*Id.*) In finding that the weight of the evidence supports the "more restrictive [RFC] after June 24, 2010, the ALJ gave great weight to the findings of Dr. Barrett whose "assessment [was] generally consistent with that of [Plaintiff's] examining disability doctor." (AR 20.) The ALJ also found that the record shows that Plaintiff sought emergency treatment for neck pain and radiculopathy in August and September 2010. (*Id.*)

United States District Court
Northern District of California

10

Fifth, the ALJ consulted the Medical Vocational Guidelines to determine whether, based on Plaintiff's RFC, age, education, and work experience, there was existing work in the national economy that Plaintiff could perform prior to June 24, 2010. (*Id.*) Plaintiff was a "younger individual age 18-49" on June 24, 2010, the established disability onset date. (*Id.*; *see* 20 C.F.R. § 404.1563.) In addition, Plaintiff has at least a high school education and is able to communicate in English. (AR 21; 20 C.F.R. § 404.1564.) Finally, Plaintiff does not have work skills that are transferrable to other occupations within his RFC. (AR 21.) Given Plaintiff's RFC prior to June 24, 2010, the ALJ found that Plaintiff was able to perform his past relevant work as a computer engineer and consultant as it is classified in the *Dictionary of Occupational Titles*. (AR 20.) In addition, the ALJ noted Plaintiff is a "younger individual" with at least a high school education, and capable of performing a full range of light work. Thus, the ALJ found Plaintiff was "not disabled" prior to June 24, 2010, because even if he could not perform his past relevant work, he could perform other light work in the national economy. (*Id.*)

The ALJ also found, however, that since June 24, 2010 Plaintiff's additional mental and physical limitations have "precluded his ability to perform the demands of his past relevant work." (*Id.*) Furthermore, the ALJ found that considering Plaintiff's "age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform. (*Id.*) Thus, the ALJ concluded that because the additional limitations "so narrow the range of work" available to Plaintiff after June 24, 2010, a finding of "disabled" was appropriate. (*Id.*)

## STANDARD OF REVIEW

The Court has authority to review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. Section 405(g). The Court may overturn a decision to deny benefits only if it is not supported by substantial evidence, or if the decision is based on legal error. *See Andrews,* 53 F.3d at 1039; *Magallenes  v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

1  support a conclusion." *Andrews,* 53 F.3d at 1039.  In determining whether substantial

2  evidence exists, the Court must examine the record as a whole, weighing both the evidence

3  that supports and detracts from the ALJ's conclusion.  *Id.*

4          Determinations of credibility, resolution of conflicts in medical testimony, and all other

5  ambiguities are to be resolved by the Commissioner.  *See Id.*; *Magallenes,* 881 F.2d at 750.

6  "The ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant v.*

7  *Heckler,* 753 F.2d 1450 (9th Cir.1984) (internal citations omitted); *see Batson v.*

8  *Commissioner,* 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is

9  subject to more than one rational interpretation, we must defer to the ALJ's conclusion.").

10  "The court may not engage in second-guessing." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039

11  (9th Cir. 2008) (internal quotation marks omitted).  "It is immaterial that the evidence would

12  support a finding contrary to that reached by the Commissioner; the Commissioner's

13  determination as to a factual matter will stand if supported by substantial evidence because it

14  is the Commissioner's job, not the Court's, to resolve conflicts in the evidence." *Bertrand v.*

15  *Astrue,* No. 108CV00147, 2009 WL 3112321 at *4 (E.D. Cal. Sept. 23, 2009).

16                                    **DISCUSSION**

17          Plaintiff argues that the ALJ: (1) relied on an improperly attested report of a consulting

18  physician; (2) failed to call on the services of a medical advisor to assist in inferring the onset

19  of Plaintiff's physical impairments; (3) improperly rejected the opinion of medical advisor,

20  Dr. Paul Weise, regarding the onset of Plaintiff's mental health limitations; (4) improperly

21  discredited Plaintiff's testimony; and (5) failed to properly assess lay witness testimony.

22  Plaintiff contends that as a result of these errors the ALJ's decision is not supported by

23  substantial evidence.

24  **I.       Reliance on the Unattested Report of Consulting Physician Chen is Harmless**

25          Plaintiff maintains that the ALJ erred by relying on an improperly attested report of

26  consulting physician Dr. Frank Chen.  Specifically, Plaintiff complains that reliance was

27  improper because Dr. Chen's name was hand-printed in block letters, not signed in cursive, on

28  the report.  (AR 742.)  Plaintiff first objected to the introduction of Dr. Chen's report at the

initial ALJ hearing in light of the allegedly unacceptable signature.  (AR 47-48.)  Plaintiff noted that Dr. Chen's printed name was unusual because Dr. Chen's signature is usually an "actual signature."  (AR 48.)  The ALJ commented that "there's some sort of what looks like scribble next to his name and I don't know if that's supposed to be initial or not."  (AR 48.)  Ultimately, the ALJ did not expressly rule on the objection, but did rely on the report.  (AR 48.)

A consultative examination report must be "personally reviewed and signed by the medical source who actually performed the examination."  20 C.F.R. §§ 404.1519n(e); 416.919n(e).  The signature of the examiner "attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents."  *Id.*  Thus, "the medical source's signature entered by any other person is not acceptable."  20 C.F.R. § 416.919n(e).

Assuming the ALJ erred in giving credit to Dr. Chen's improperly attested report, the error is harmless.  *See Burch v. Banhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").  Specifically, the ALJ's reliance on Dr. Chen's report is "inconsequential to the ultimate nondisability determination in the context of the record as a whole."  *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (internal quotation marks omitted).  The concluded onset date of June 24, 2010 is more than three months before Dr. Chen's examination of Plaintiff in October 2010.  Moreover, the ALJ based her physical impairment findings primarily on Dr. Pancho's assessment and the x-ray showing minimal injury; she cited Dr. Chen's conclusion as merely "consistent with" that of Dr. Pancho.  And, finally, the ALJ disregarded Dr. Chen's opinion that Plaintiff was capable of lifting only 10 pounds occasionally. Thus, the ALJ did not commit reversible error in partially crediting Dr. Chen's report because, even without the report, the ultimate RFC determination was supported by Dr. Pancho's report.

## II.    Necessity of Medical Expert to Determine Onset of Physical Impairments

Plaintiff next asserts that the ALJ erred by improperly inferring the disability onset date of Plaintiff's physical impairments without the assistance of a medical expert as required by

United States District Court
Northern District of California

13

United States District Court
Northern District of California

Social Security Ruling ("SSR") 83–20.[2]  The Ruling provides in relevant part that:

> [i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available.... [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.
>
> ....
>
> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83–20.

"[I]n this context 'should' means 'must'." *Armstrong  v.  Comm'r. of Soc. Sec*., 160 F.3d 587, 590 (9th Cir. 1998).  In *Armstrong*, Plaintiff filed SSI and DIB applications with a protective filing date of August 9, 1994.  *Id.* at 589.  He alleged a disability onset date of May 15, 1991.  *Id.*  The ALJ granted the SSI application, finding an onset date of August 9, 1994. *Id.*  Nonetheless, the DIB application was denied based on a finding that Armstrong was not disabled prior to March 31, 1992, the last date that Armstrong was insured.  *Id.*  The court noted that, although Armstrong had not been diagnosed until 1994, the record showed that he experienced deteriorating health problems for the past 30 years, but that it could not be determined from the record when those impairments became disabling.  *Id.* at 590.  Because of this uncertainty, the Ninth Circuit held "the ALJ was required to call a medical expert to aide in determining the date of onset."  *Id.*

Defendant argues the ALJ here did not infer an onset date as in *Armstrong*, but rather issued two distinct decisions regarding SSI and DIB benefits, finding evidence in support of a 2010 onset of disability, but not earlier.  The Court disagrees.  The procedural history, facts,

---

[2] Although Dr. Weise testified as a medical expert at the hearing, he testified only regarding Plaintiff's mental condition, and not the onset of any physical disability.  Plaintiff also contests that the ALJ's rejection of Dr. Weise's testimony regarding the onset of mental impairments.  The Court addresses that issue separately.

and onset issue in Plaintiff's case closely resemble those of *Armstrong*. Plaintiff, as

Armstrong, applied for both SSI and DIB benefits. As Armstrong, Plaintiff was found

disabled as of the date of his application and was granted SSI benefits, but was found not to

have been disabled as of the date he was last insured and was denied DIB benefits. The

record in Plaintiff's case, as the record in *Armstrong*, indicates physical impairments prior to

the date last insured and it is difficult to determine, based on the record alone, when the

physical impairments became disabling.

The ALJ's favorable disability determination was based, in part, on the limitations

arising from Plaintiff's fibromyalgia, cervical degenerative disc disease, spondylosis, and

bilateral neural foraminal stenosis. As Plaintiff asserts, these conditions do not "arise

overnight," and their onset is ambiguous. (Dkt. No. 19 at 4.) Moreover, Plaintiff's ex-wife,

Ms. Nabhani, testified that Plaintiff was trying to hide his pain as early as 2002. Plaintiff

testified that he ceased any medical treatments in 2001 solely because of a lack of income and

insurance. Plaintiff has not demonstrated an ability to carry on a full-time job since the

alleged onset date of January 1, 2004. As in *Armstrong*, the ALJ chose the protective date to

start providing benefits even though the record is ambiguous as to when the impairments

became disabling. 160 F.3d at 590. Because the onset date of Plaintiff's physical

impairments is ambiguous, the ALJ was required to call a medical expert before inferring the

date. SSR 83–20 (1983). Thus, the Court must remand for reconsideration of the onset date

of Plaintiff's physical disability with the assistance of a medical advisor.

### III.   The ALJ Did Not Err in Determining the Onset Date of Mental Impairments

Plaintiff argues that, although the ALJ called on the services of mental health medical

expert Dr. Weise, his testimony concerning the onset of disabling mental health impairments

was improperly discredited. During the supplemental hearing, Dr. Weise testified that

Plaintiff suffers from numerous mental health impairments. He further opined that, based on

an extrapolation from Plaintiff's presentation, it was likely that the mental health limitations

emerged in 2007, prior to the date last insured.

"As a general rule, more weight should be given to the opinion of a treating source than

United States District Court
Northern District of California

to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The weight an ALJ should give to a non-examining or non-treating source depends on the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion. *See* SSR 96–6P, 1996 WL 374180 at *2 (Jul. 2, 1996); 20 C.F.R. § 404.1527(c)(3). The ALJ may reject a non-examining or non-treating physician's opinion "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

The ALJ rejected Dr. Weise's onset opinion, in part, because it was "based on extrapolation from presentation and not the record." (AR 19.) While this reason for rejection is specific, it is not valid. Given that Dr. Weise's only interaction with Plaintiff was at the supplemental hearing, the "presentation" must refer to the record that the ALJ had Dr. Weise review, as well as Plaintiff's discussion of symptoms when questioned by Dr. Weise. In addition, regarding Plaintiff's post-2010 RFC, the ALJ expressly gave great weight to Dr. Weise's testimony because Dr. Weise had the opportunity to review the entire file. Dr. Weise also had the opportunity to hear Plaintiff's testimony at the ALJ hearing. Therefore, rejecting the testimony on the ground that the testimony was not based on the record is not a legitimate reason for doing so.

The Commissioner's reliance on *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), for the proposition that a medical expert's testimony can constitute substantial evidence only if it is consistent with other evidence in the record is unhelpful. Dr. Weise's testimony was in fact consistent with other evidence in the record. In April 2011 Dr. Thomsen, an examining psychologist, diagnosed Plaintiff with several psychological impairments and opined that these impairments "reflect long-term or chronic traits that are likely to have persisted for several years prior to the present assessment." (AR 840.) Dr. Kalich, a licensed clinical psychologist, reported that Plaintiff's "mental health difficulties began in 2000, shortly after two significant stressors: a work-related injury and a disagreement with his supervisor. Since that time, Mr. Nabhani has continued to struggle with depression and anxiety, and he reported that his symptoms have grown worse over time." (AR 907.)

16

The ALJ also rejected Dr. Weise's opinion based on the significant lapse of treatment from 2001 to 2010. Plaintiff ceased treatment in 2001 because of an inability to pay for insurance, and only resumed treatment in 2010 when he learned about affordable healthcare at Highland Hospital. Because an inability to afford treatment is not evidence sufficient to support a denial of disability, the ALJ erred in using the lapse in treatment to support her rejection of Dr. Weise's opinion. *See infra* Part IV.A.

Nonetheless, in rejecting Dr. Weise's testimony, the ALJ cited other specific evidence in the record. She emphasized Dr. Weise's testimony that despite a reference in the record to a 2001 panic attack, "there is no evidence of an ongoing problem with panic attacks." (AR 18.) Dr. Weise also testified that there is "no evidence of any psychiatric hospitalization to indicate an episode of decompensating, and no mental health treatment generally." (*Id.*) She also found it "especially significant" that Plaintiff "denied having mental health problems during his consultative examination," and testified at his 2012 hearing that he was not receiving any mental health treatment. (AR 19.) The ALJ further found persuasive that Plaintiff "has continued to work long after the alleged onset date." Because the ALJ referred to specific evidence in the record, she properly evaluated and did not err in rejecting the opinion of Dr. Weise.

## IV. The ALJ did not Err in Discrediting Plaintiff's Testimony

Plaintiff next asserts the ALJ erred by discrediting Plaintiff's testimony. When assessing a claimant's credibility, the ALJ will consider, but "is not required to believe, every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal quotation marks omitted). The ALJ conducts a two-step analysis to assess subjective testimony. *Tommasetti*, 533 F.3d at 1039. First, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom. *Id.* (internal quotation marks omitted). If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by providing clear and convincing reasons. *Id.* The ALJ may consider many factors in

weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.*

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms. Because the ALJ did not make a finding that the Plaintiff was malingering, the ALJ must provide "clear and convincing reasons in support of the adverse credibility finding" by specifying what testimony is not credible and what evidence undermines Plaintiff's complaints. *Id.* at 1039. The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). The ALJ must present "specific, cogent reasons" to reject the claimant's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ found Plaintiff's testimony as to "the intensity, persistence and limiting effects" of his symptoms "not credible" "to the extent they are inconsistent with the residual functional capacity assessment." (AR 18.) The ALJ offered the following reasons for concluding that Plaintiff's statements regarding the mental impairments were not credible prior to June 24, 2010: (1) the extended lapse in treatment; (2) the continued ability to work; and (3) the previous denial of mental health problems. The ALJ offered the following reasons for rejecting Plaintiff's testimony regarding physical impairments prior to the determined onset date: (1) lapse in treatment; (2) the continued ability to work; and (3) the contradictory assessment of physicians. In light of the deference that must be given to the ALJ's decision, the Court finds that the continued ability to work and contradictory medical assessments are clear and convincing reasons sufficient to support an adverse credibility finding with regard to Plaintiff's physical impairments. In addition, Plaintiff's work history and denial of mental health issues are adequate reasons in support of the adverse credibility finding regarding Plaintiff's mental health limitations.

### A.      Ten Year Lapse in Treatment

First, the ALJ discredited Plaintiff's allegations of impairments prior to June 2010 because Plaintiff did not receive treatment for his impairments from 2001 until 2010. Although Plaintiff testified he was unaware of affordable or low-cost healthcare options, the ALJ did not credit this testimony because Plaintiff "is a well-educated, resourceful individual who has been able to set up his own computer consulting business." (AR 16.)  Plaintiff contends this rationale is not clear or convincing because it appears to be a "value judgment that detracts from the social and economic reality that an uninsured and unsuccessfully self-employed individual" faces in the healthcare market.  (Dkt. No. 16 at 25.)

An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding unless one of a "number of good reasons for not doing so applies." *Orn*, 495 F.3d at 638 (internal quotation marks and citation omitted).  Disability benefits may not be denied because of a claimant's inability to obtain treatment due to lack of funds or insurance. *Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir.1995).  Plaintiff testified that he stopped seeking any medical treatment in 2001 because he "ran out of insurance."  (AR 66-67.)  Only when he was informed about affordable options at Highland Hospital in June 2010 was Plaintiff able to resume treatment.  (AR 66-67.)  Plaintiff also testified that he has been homeless, borrows money, and only works about four hours per week.  These are legitimate explanations supported by the record for his failure to seek medical treatment.

Defendant argues that Plaintiff having sought medical treatment at the emergency room in September 2010 is evidence of his knowledge regarding the availability of low cost healthcare.  However, this argument is unpersuasive because Plaintiff sought emergency care at Highland Hospital—the very hospital that offers the affordable healthcare services that allowed Plaintiff to resume treatment three months earlier.  Thus, Plaintiff's failure to seek treatment prior to his discovery of affordable services at Highland Hospital is not a clear and convincing reason for the ALJ's discrediting his testimony.

United States District Court
Northern District of California

**B.      Denial of Mental Impairment**

Second, the ALJ discredited Plaintiff's allegations of mental impairments prior to 2010 because Plaintiff, in June 2010, denied having mental health issues to consultative psychologist Dr. Spivey.  Specifically, Dr. Spivey reported: "The claimant reports that he has physical, not mental health issues."  (AR 757.)  To determine whether a claimant's testimony is credible, the ALJ may consider "the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The record reveals Plaintiff's difficulty discussing his mental health.  At the examination in which he denied any "mental health issues," Dr. Spivey observed that Plaintiff was "defensive and guarded" and "[r]esisted elaborating on his personal history."  (AR 757.)  Dr. Brodsky opined in 2001 that "[Plaintiff's] tendency to repress or deny problems makes him particularly resistant to the idea that psychological factors can influence his symptoms." (AR 477.)  Finally, Dr. Kalich, in addressing Plaintiff's previous denial of mental health problems, noted that this tendency may be due to his culture's stigmatization of mental health issues.  (AR 906.)  Nonetheless, Plaintiff alleged in his disability appeal that he has been depressed since 2000.  (AR 635.)  The ALJ may consider Plaintiff's "inconsistent statements" as to his mental health issues regarding the credibility to be afforded his current allegations of severe medically determinable mental health impairments.  *Smolen*, 80 F.3d at 1284.  Because the mental health evidence "can support either outcome," the Court cannot substitute its judgment for that of the ALJ.  *Andrews*, 53 F. 3d at 1039-40.  Accordingly, Plaintiff's denial of mental health issues can suffice to support a finding of adverse credibility.

**C.      Continued Ability to Work**

Third, the ALJ found it significant that Plaintiff has continued to work "long after the alleged onset date."  (AR 19.)  An ALJ may consider a claimant's work history in finding a claimant not credible.  *Thomas*, 278 F.3d  at 959.  However, that a claimant attempts to work, and because of his impairments fails, does not necessarily support an adverse credibility finding.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (finding a failed work

20

attempt insufficient to discredit claimant).

In *Lingenfelter*, the court stated that the mere "fact that a claimant tried to work for a short period of time and, because of his impairments, failed," does not mean "that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment." *Id.* at 1038.  The court found the inability to work "especially unconvincing" where the claimant attempted to work "only because of extreme necessity," because it was "at least as likely that the claimant tried to work in spite of his symptoms, not because they were less severe than alleged." *Id.* at 1038-39.

The *Lingenfelter* claimant was fired from a job he performed for a period of nine weeks after his date last insured "because he was too slow to do the work adequately." *Id.* at 1033.  Similarly, Plaintiff's pain and limitations have severely limited his ability to maintain significant gainful employment.  The record indicates that, after the alleged onset date, Plaintiff has a complicated work history.  Plaintiff and Ms. Nabhani testified at great length regarding Plaintiff's failed attempt to work at the cigarette business.  In 2008, Plaintiff attempted to work as a computer engineer for a consulting firm, but Plaintiff's pain precluded him from successfully commuting or staying at the job for the eight hours required.  In late 2008, Plaintiff opened a computer consulting shop, but was unable to work more than six hours per week, and the shop closed in 2010.  Plaintiff then moved the computer consulting business to his residence.  He subsequently lost his residence, and moved the business to another office.  He now has about two clients—four hours of work—per week.

Work that the claimant has to stop after a short period of time because of his impairments is generally considered an unsuccessful attempt to work.  *See* 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).  However, although Plaintiff's work record is tenuous, he has been able to maintain some level of employment, and has not necessarily "failed" to work. *Lingenfelter*, 504 F.3d at 1038.  In addition, a continued, although limited, ability to work can support a finding of adverse credibility.  *See Denham v. Astrue*, 494 Fed. Appx. 813, 815 (9th Cir. 2012) (affirming a credibility finding that relied, in part, on two years of part-time janitorial work after the alleged onset date); *see also Bray v. Comm'r of Soc. Sec.*, 554 F.3d

United States District Court
Northern District of California

21

1219, 1227 (9th Cir. 2009) (affirming a credibility finding that relied in part on the claimant's

work for a friend as a part-time caregiver, and sought out other employment).  Plaintiff's work

record can be found to corroborate his disability rather than indicate an ability to work

contrary to his testimony.  Regardless, because the evidence can support either outcome, and

in light of the deference that must be given to the ALJ's decision, the Court cannot substitute

its judgment for that of the ALJ.  *Andrews*, 53 F.3d at 1039-40.

### D.   Contradictory Evidence

The ALJ did not err in discrediting evidence of Plaintiff's physical disabilities and

adopting a more moderate view of his physical impairments.  In addition to his continuous

work history, Plaintiff's relatively unremarkable x-ray, combined with the assessment of Dr.

Pancho, who opined that Plaintiff was capable of a full range of light work, sufficiently

supported the ALJ's reasoning.  The ALJ's finding is supported by "substantial evidence in

the record as a whole," and was based on a permissible determination within the ALJ's

province.  *Andrews*, 53 F.3d at 1039.  Moreover, because the Court may not engage in

"second-guessing," the Court finds that the ALJ properly discounted Plaintiff's testimony

regarding his physical symptoms.  *Thomas*, 278 F.3d at 959.

## V.   The ALJ Erred in Rejecting the Lay Witness Testimony

Plaintiff maintains the ALJ also erred by failing "to discuss what weight, if any, was

given to the testimony of Ms. Nabhani."  (Dkt. No. 16 at 27.)  Defendant argues that because

the ALJ properly rejected Plaintiff's testimony, it follows that the ALJ properly rejected Ms.

Nabhani's "duplicative testimony for the same reasons."  (Dkt. No. 18 at 9.)  On the other

hand, Plaintiff asserts that Ms. Nabhani's testimony is not, in fact, duplicative of Plaintiff's

testimony because it related to Plaintiff's irritability and frustration; therefore, Plaintiff argues

her testimony was relevant to the onset of mental health limitations, and thus, was

consequential "to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1122.

"In determining whether a claimant is disabled, an ALJ must consider lay witness

testimony concerning a claimant's ability to work."  *Stout v. Comm'r of Soc. Sec. Admin.*, 454

F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R §§ 404.1513(d)(4) & (e).  Lay witness testimony is

United States District Court
Northern District of California

22

competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996).  To discount lay witness testimony, the ALJ must give reasons "germane to [each] witness." *Carmickle v. Commissioner, Soc. Sec. Admin.*, 535 F.3d 1155, 1164 (9th Cir. 2008) (concluding ALJ had proper basis to reject lay witness testimony).

Nonetheless, an error in rejecting lay witness testimony is harmless where the "mistake is nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout*, 454 F.3d at 1055.  If the ALJ provided reasons for rejecting testimony regarding specified limitations, the Court may not disregard said reasoning and "reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations."  Molina, 674 F.3d at 1121.  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ merely discussed Ms. Nabhani's testimony while describing and subsequently rejecting Plaintiff's testimony; she did not give any reasons for rejecting Ms. Nabhani's own testimony.  Ms. Nabhani's testimony, however, described limitations beyond those Plaintiff discussed.  As Defendant acknowledges in its memorandum, Ms. Nabhani testified that since she first met him he had been trying to hide his pain "and he had a lot of anger and you know just frustrated." (AR 74.)   She further testified that the anger and frustration has gotten worse over time and that he has become more irritable.  (AR 74-75.)   Defendant contends that Plaintiff testified to the same facts, citing page 60 of the administrative record.  (Dkt. No. 18 at 10.)  Plaintiff, however, merely testified to how little he was able to assist his Ms. Nabhani with her cigarette business; he did not testify about hiding his pain and his growing frustration and irritability.  (AR 60.)

To the extent that the ALJ rejected Ms. Nabhani's testimony, the ALJ's failure to provide reasons for doing so cannot be considered harmless error because the error is neither nonprejudicial nor inconsequential to the ultimate disability determination.  If fully credited,

Ms. Nabhani's testimony supports a finding that Plaintiff exhibited mental health issues and side effects from his pain that may have rendered him incapable of working prior to the date last insured.  In fact, Ms. Nabhani's testimony about Plaintiff's demeanor and emotional issues beginning in 2002 substantiates the opinions of Dr. Weise, Dr. Kalich, and Dr. Thomsen regarding Plaintiff's ongoing mental health limitations.   Thus, the Court cannot find that no reasonable ALJ would reach a different determination when fully crediting Ms. Nabhani's testimony.  Consequently, the ALJ's error is not harmless, and the Court must remand for further discussion of the testimony.

## CONCLUSION

For the reasons explained above, the Court finds that the ALJ did not err in relying on Dr. Chen's report, or discrediting the testimony of Dr. Weise or Plaintiff.  However, the ALJ erred in not calling on a medical advisor to assist with the determination of the onset of Plaintiff's physical impairments, and by failing to provide reasons for discrediting Ms. Nabhani's testimony.

The Court has discretion to determine whether to reverse or remand a social security case.  *Lewin v. Schweiker*, 654 F.2d 631, 635-36 (9th Cir. 1981); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  "If additional proceedings can remedy defects in the original administrative proceedings," the case should be remanded.  *Lewin*, 654 F.2d at 635.  Here, remand is warranted because additional proceedings may remedy the defects in the ALJ's analysis.  Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment in part, DENIES Defendant's Cross-motion for Summary Judgment, and remands for: (1) reconsideration of the onset date of Plaintiff's physical disabilities with the assistance of a medical advisor; and (2) a more thorough discussion of the testimony of Ms. Nabhani.

**IT IS SO ORDERED**.

Dated:  March 5, 2014

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

24